# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# GAINESVILLE DIVISION

ANTHONY WAYNE HARDIGREE,

    Plaintiff,

  v.

STATHAM POLICE OFFICER MARC LOFTON, individually, CITY OF STATHAM, STATE TROOPER GARRETT SMITH, individually, and BARROW COUNTY SHERIFF'S DEPUTY CHAD NORRIS, individually,

    Defendants.

Civil Action
File No. 2:17-cv-236-RWS

## PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT CHAD NORRIS' MOTION TO DISMISS

Plaintiff Anthony Wayne Hardigree ("Hardigree") hereby files this brief in opposition to Defendant Barrow County Deputy Chad Norris' motion to dismiss.

## INTRODUCTION

Defendant Chad Norris' ("Norris") motion to dismiss on qualified immunity grounds is devoid of merit; indeed, it borders on sanctionable conduct under Fed. R. Civ. Pro. 11. Norris does not like the facts that Plaintiff has pled, asserting that the Plaintiff has a duty to plead his version of the facts. *See* Doc. 31-1, at 5, 6, 9, 10, 11. Norris also does not like established Eleventh Circuit precedent that gave

him "fair notice" his actions on August 4, 2016 violated clearly established law.[1]
These are frivolous arguments at the pleadings stage of a § 1983 case. Hardigree requests that the Court deny Norris' motion and, pursuant to Fed. R. Civ. Pro. 11(c), order Norris' counsel to show cause as to why sanctions should not be awarded.[2]

## STATEMENT OF THE CASE

A. <u>Procedural History</u>

Hardigree filed suit November 13, 2017. Defendants Marc Lofton, the City of Statham, and Garrett Smith filed answers. *See* Docs, 12, 14, 16.

Hardigree struggled to learn the proper identity of the Barrow County deputy who initially entered his home and used excessive force in the course of his unlawful arrest, at least in part due to the conduct of the Barrow County Sheriff's Office.[3] That is why Hardigree named Deputy Nicole Geiman in his First

---

[1] Referring to *Moore v. Pederson*, 806 F.3d 1036 (11th Cir. 2015), Norris' attorney writes, "[u]nderstanding that is the law of this Circuit, and was so at the time of the actions here, this Defendant in good faith contends this should not be the law." Doc. 31-1, p. 9.

[2] Hardigree submits that sanctions are appropriate here because this Motion was filed to cause unnecessary delay and, as to Norris' second argument, a motion to dismiss is not an appropriate place to argue that the Court should disregard established Eleventh Circuit precedent.

[3] In response to a records request made pursuant to the Georgia Open Records Act, the Barrow County Sheriff's Office declined to produce basic information such as a CAD report (which would identify the officers on the scene) or the body camera

Amended Complaint,. *See* Doc. 10. When Defendant Geiman's attorney filed a motion to dismiss, Hardigree's counsel asked opposing counsel to identify a deputy depicted in screen captures of video provided by the City of Statham, leading Plaintiff to replace Geiman with Defendant Norris, Doc. 27.[4]

B.  Statement of Facts[5]

On August 4, 2016, the Defendants arrested a man on suspicion of narcotics violations. Doc. 27, at ¶ 9. The man had suspected narcotics either on his person or in his vehicle. *Id.* ¶ 10. The Defendants learned that the man had earlier been seen in or around the home where Plaintiff lives. *Id.* ¶ 11. Defendants had no information as to whether the man had any interaction with anyone inside the home. *Id.* ¶ 17.

Acting on nothing more than a hunch that Plaintiff's home might be associated with criminal activity, Defendants knocked on the front door leading into Plaintiff's home. *Id.* ¶ 12. The Defendants did not have a warrant to search the home or an arrest warrant for anyone inside the home. *Id.* at ¶ 13. Defendants had

---

video footage from any of its officers, including Deputy Nicole Geiman, who is depicted in a Statham Police Department officer's body camera wearing what appears to be a chest mounted body camera with a green light activated.
[4] Norris complains that he was not consulted about whether Plaintiff had his permission to amend the Complaint. Doc. 31-1, at 2 n.1. Plaintiff sought and obtained the permission of the parties before the Second Amended Complaint was
[5] Hardigree summarizes the facts alleged in his Second Amended Complaint here because those are the only facts that matter. *See* Fed. R. Civ. Pro. 12(b).

not witnessed any person suspected of criminal activity enter the home. *Id*. ¶ 14. Defendants had no information connecting any of the residents or occupants of the home with the man they had arrested. *Id*. ¶ 15. Defendants did not know who lived in the home and did not know who, if anyone, was inside when they knocked on the door. *Id.* ¶ 16.

Hardigree came to the door. *Id.* ¶ 19. Defendants Lofton, Norris, and Smith were standing together on the front porch. *Id.* ¶ 18, 25. Defendants began to question Plaintiff, and he replied in a respectful manner. *Id.* ¶ 20. The Defendants asked for consent to search the home. *Id.* ¶¶ 18, 25. Hardigree refused to consent to a warrantless search of his home. *Id.* ¶¶ 26–28. He explained that the home belonged to his family member, who also lived there, and that he would need to get her consent before he could agree to let the officers into the home. *Id*. ¶ 26. Throughout his interaction with the Defendants, Hardigree did not cross the threshold of the doorframe onto his front porch, much less leave his home. *Id.* ¶¶ 19, 24, 31, 35, 37.

After refusing to give the officers consent to conduct a warrantless search of his home, Hardigree terminated his encounter with the Defendants. *Id* . ¶ 30. He walked further inside his home, away from the front doorway. *Id.* ¶ 31. One or more of the Defendants ordered Hardigree to stop, claiming that he was being

detained inside his own home. *Id*. ¶ 32. When Hardigree did not immediately stop his path further into his home, the Defendants unlawfully entered his home without a warrant. *Id.* ¶ 33. The Defendants—led by Lofton and Norris—barged into his home, tackled, tased, handcuffed, and arrested him for crimes he did not commit. *Id.* at 40-44; 50-51 (arrest); 64 (handcuffing).

The Defendants had no probable cause or exigent circumstances to justify a warrantless entry into Hardigree's home. Hardigree was already inside his home when the Defendants first encountered him. Id. ¶ 37. The Defendants had no arguable basis to believe that Hardigree presented an imminent risk of serious injury to any person. The Defendants had no arguable basis to believe that there was any contraband or illegal drugs inside the home, much less that Hardigree would attempt to destroy it. *Id.* ¶ 39.

When the officers unlawfully crossed the threshold of Hardigree's home, Norris participated in taking Hardigree to the ground and ensured that he remained on the ground while Defendant Lofton repeatedly tased him. *Id.* ¶ 43. Knowing that the Plaintiff was lying on the ground and offering no resistance to the Defendants, Investigator Norris and Trooper Smith did nothing to intervene and stop Officer Lofton from gratuitously tasing the Plaintiff on at least three occasions. *Id.* ¶ 45.

Throughout his encounter with the Defendants, Hardigree did not disobey any lawful commands or do anything that would cause a reasonable person to believe that he intended to harm to anyone. Hardigree was not loud, boisterous or disruptive in a public place. Hardigree did not resist or obstruct any of the Defendants in the lawful exercise of their duties. *Id.* ¶ 47–50. Hardigree did exercise his Fourth Amendment right to decline a warrantless search of his residence and to terminate a voluntarily encounter with a law enforcement officer. *Id.* ¶ 48, 50.

## ARGUMENT AND CITATION OF AUTHORITY

### I. Preliminary Matters and Standard of Review

#### A. Plaintiff's facts are controlling

"[T]he purpose of a motion under Federal Rule 12(b)(6) is to test the formal sufficiency of the statement of the claim for relief; the motion is not a procedure for resolving a contest between the parties about the facts or the substantive merits of the plaintiff's case." Charles Alan Wright, et al., 5B *Fed. Prac. & Proc. Civ.* § 1356 (3d ed. 2018). Accordingly, Rule 12 "must be read in conjunction with Rule 8(a), which sets forth the requirements for pleading a claim for relief in federal court and calls for 'a short and plain statement of the claim showing that the

pleader is entitled to relief.'" *Id.* "Only when the plaintiff's complaint fails to meet this liberal pleading standard is it subject to dismissal under Rule 12(b)(6)." *Id.*

Although Norris seems to think that something more is required in § 1983 cases,[7] he is wrong. In qualified immunity cases, there is no heightened pleading standard. *See Randall v. Scott*, 610 F.3d 700–10 (11th Cir. 2010) (overruling Circuit precedent applying a heightened pleading standard to § 1983 cases). Plaintiff's facts must also be construed in the light most favorable to Plaintiff and all reasonable inference should be drawn in his favor. *See Chaparro v. carnival Corp.*, 693 F.3d 1333, 1335 (11th Cir. 2012); *Marsh v. Butler Cty.*, 268 F.3d 1014, 1023 (11th Cir. 2001).[8]

### B. Eleventh Circuit precedent is binding

In every case, published Eleventh Circuit precedent binds the parties and the Court. Prior precedent takes on special meaning in qualified immunity cases because it also serves to put government officials on notice that their conduct violates the law. In his motion to dismiss, Norris does not argue that no pre-

---

[7] Norris explicitly argues there is an implicit rule requiring a heightened pleading standard in § 1983 cases, as opposed to "mere rear-enders." *See* Doc. 31-1, at 4 ("[W]hile *Iqbal* and *Twombly* do not label their conclusions as heightened pleadings, there is no doubt whatsoever that what is intimated there is that much more is required than a vanilla representation the defendant hurt me, and I am entitled to recover form of pleading.").

[8] Needless to say, the Court must disregard Defendant Norris' alternative facts.

existing decisional law put him on notice; instead, he asserts "in good faith" that the Eleventh Circuit just got it wrong in *Moore v. Pederson*, 806 F.3d 1036 (11th Cir. 2015). Doc. 31-1, at 9. Inviting the Court to disregard Circuit precedent at the pleadings stage is absurd, frivolous, and sanctionable conduct. Only the full Eleventh Circuit sitting en banc, or a decision by the United States Supreme Court, can spare Norris from the law articulated in *Moore*. *See United States v. Vega-Castillo*, 540 F.3d 1235, 1236 (11th Cir. 2008) ("Under the prior precedent rule, we are bound to follow a prior binding precedent 'unless and until it is overruled by this court en banc or by the Supreme Court.'" (quoting *United States v. Brown*, 342 F.3d 1245, 1246 (11th Cir. 2003)). But even were such a court to reverse the position articulated in *Moore*, the most that hypothetical decision could do would be to find that no constitutional violation occurred—qualified immunity is necessarily inapplicable.[9]

## II. Illegal Entry and Seizure

Probable cause to arrest and probable cause of the existence of a recognized exigency are required before law enforcement's warrantless arrest of a person in their home can be considered reasonable under the Fourth Amendment. *See Bashir*

---

[9] Pursuant to Rule 11, a party has safe harbor to advocate "for extending, modifying, or reversing existing law or for establishing new law," but such an effort cannot be made on the motion to dismiss stage—especially when the premise is qualified immunity.

*v. Rockdale Cty., Ga.*, 445 F.3d 1323, 1328 (11th Cir. 2006) ("[A] warrantless arrest in a home violates the Fourth Amendment unless the arresting officer had probable cause to make the arrest and either consent to enter or exigent circumstances demanding that the officer enter the home without a warrant.").[10] In *Moore*, the Eleventh Circuit refined this rule, stating that even a limited seizure is unreasonable in the home: "in the absence of exigent circumstances, the government may not conduct the equivalent of a *Terry* stop inside a person's home." 806 F.3d at 1039.

    Regarding exigency, the law is also clearly established. "Before agents of the government may invade the sanctity of the home, the burden is on the government to demonstrate exigent circumstances that overcome the presumption of unreasonableness that attaches to all warrantless home entries." *Welsh v. Wisconsin*, 466 U.S. 740, 750 (1984); *see also Gennusa v. Canova*, 748 F.3d 1103, 1115 (11th Cir. 2014) (recognizing burden as belonging to law enforcement defendants in § 1983 action). "Mere speculation [about exigent circumstances], without factual support, is not enough to overcome the warrant requirement." *United States v. Santa*, 236 F.3d 662, 671 (11th Cir. 2000). In such situations,

---

[10]*See also McClish v. Nugent*, 483 F.3d 1231 (11th Cir. 2007) (holding that Fourth Amendment "does not permit an officer to cross this constitutional line [of the home] and forcibly remove a citizen from his home absent an exigency or consent").

"police bear a heavy burden when attempting to demonstrate an urgent need that might justify warrantless searches or arrests." *Welsh*, 466 U.S. at 749–50.

Although Defendants clearly entered Hardigree's home to effectuate an arrest, as they immediately tackled Plaintiff, even if they had entered to conduct a search, the law is clear that such an entry was unlawful. "[W]arrantless searches, [are] in the main, '*per se* unreasonable.'" *Kentucky v. King*, 563 U.S. 452, 474 (2011) (quoting *Mincey v. Arizona,* 437 U.S. 385, 390 (1978)). A warrantless search is allowed only upon a showing of probable cause of criminality and probable cause of exigency. *See Santa*, 236 F.3d at 668–89 (citing *United States v. Tobin*, 923 F.2d 1506, 1510 (11th Cir. 1991) (en banc)).

The application of these hornbook principles to the facts of Plaintiff's Second Amended Complaint hopelessly doom Defendant Norris' motion. Hardigree has alleged facts that, if proved at trial, would demand a jury find that the Defendants violated the Fourth Amendment when they entered his home without a warrant or exigent circumstances, threw him to the ground, tased, handcuffed, and arrested him.

Apparently, Norris' defense will be that exigent circumstances justified a warrantless entry because Hardigree might destroy evidence, presumably, narcotics. But under the facts alleged by Hardigree, the officers did not have any

basis at all, let alone probable cause, to believe that there were narcotics in Hardigree's home. Norris is stuck with those facts at the pleadings stage. *See generally* Wayne R. LaFave, 3 *Search and Seizure: A Treatise on the Fourth Amendment*, §§ 5.5(c), 6.5(b) (5th ed. 2017) (law enforcement must show probable cause that contraband is present, along with reasonable grounds to believe that the contraband would be destroyed absent immediate intervention.)[11]

Importantly, nowhere in Norris' motion to dismiss does he argue, even based on his impermissible version of facts, that there was *probable cause* to arrest Hardigree (for anything other than resisting a concededly impermissible *Terry* stop) or to believe there were narcotics in the home. In other words, even if the Court were to acquiesce to Norris' bizarre demands to (a) consider his facts and to (b) ignore the binding precedent of *Moore*, Norris' motion would still have to be denied. At most, Norris argues that *had Plaintiff only pleaded different facts*, "there [would have been] reasonable suspicion to question the resident of the home where the drug bust occurred."[13] Implicitly, even Norris acknowledges that there was no

---

[11] As the sources cited in § 6.5(b) of LaFave's treatise illustrate, numerous courts have required a heightened probable cause showing regarding the existence of contraband before a warrantless search can be deemed reasonable under the Fourth Amendment. *See id.* at n.40 and accompanying text.

[13] Norris does not articulate what he had reasonable suspicion to believe Hardigree had done that was illegal. *Cf. Morris v. Town of Lexington Alabama*, 748 F.3d 1316, 1324 (11th Cir. 2014) ("Bradford and Bowers say they had reasonable

probable cause to arrest or search or believe that Hardigree possessed contraband.[14] Without probable cause, there is simply no way for Norris to get to where he needs to be for his actions to be justified. Absent probable cause, any seizure of Hardigree was unlawful. And absent probable cause for the presence of contraband, Norris' claimed exigency cannot exist. Thus, Norris' motion premised on the legality of the entry into Plaintiff's home and Plaintiff's subsequent seizure must be denied.

III. **Excessive Force, Failure to Intervene, and False Arrest**

A. Excessive Force

Hardigree alleges that the Defendants entered his home without a warrant or exigent circumstances; therefore, any force used against him to arrest him was *per se* unreasonable. *See Jackson v. Sauls*, 206 F.3d 1156, 1171 (11th Cir. 2000). Even assuming that the facts pled by Hardigree were somehow insufficient as to the

---

suspicion to detain Morris, to make a *Terry* stop. Reasonable suspicion of what? And precisely when did they have it? They do not say. They did not have reasonable suspicion of anything concerning Morris when they approached the front door of his house and knocked, for the woman had said nothing at all indicating that Morris had done anything wrong. So, the officers' reasonable suspicion had to have arisen after Morris opened the door."). Defendant Norris did not know who lived in the house, who was present in the house, or anything about any supposed interaction between the house's occupants and the arrestee when he approached Hardigree's door.

[14] Norris does not cite a single exigent circumstances case or otherwise articulate how exigency might have existed other than the simple fact of proximity between Plaintiff and the arrestee and his contraband.

unlawful entry claim, Hardigree has alleged facts sufficient to allow a reasonable jury to find that Norris, together with his co-defendants, used excessive force and arrested Hardigree without probable cause.

Hardigree alleges that he greeted the Defendants at his front door and politely answered their questions. Hardigree did not disobey any lawful commands or do anything that would cause a reasonable person to believe that he intended to harm to anyone. Hardigree did not resist or obstruct any of the Defendants in the lawful exercise of their duties. *Id.* ¶ 47–50. Hardigree simply exercised his Fourth Amendment right to decline a warrantless search of his residence and to terminate a voluntarily encounter with law enforcement. *Id.* ¶ 48, 50.

Under Hardigree's facts, he did not commit any crimes in the Defendants' presence before they crossed the threshold of his front door. Furthermore, Hardigree alleges that he offered no resistance to the Defendants when they barged into his home and threw him to the ground. *Id.* ¶ 45. Nonetheless, Norris held Hardigree down while Defendant Lofton repeatedly tased him. *Id.* ¶ 43. Norris actively participated in a gratuitous use of excessive force. Further, he made no effort to intervene and stop Officer Lofton from repeatedly discharging his taser, despite being in a position to do so.

If an arrestee is not resisting or has otherwise been secured, the use of violent force is not permitted. *See, e.g.*, *Oliver v. Fiorino*, 586 F.3d 898, 907 (11th Cir. 2009) (finding that "the repeated tasering of Oliver into and beyond his complete physical capitulation was grossly disproportionate to any threat posed and unreasonable under the circumstances" such that qualified immunity was inappropriate); *Hadley v. Gutierrez*, 526 F.3d 1324, 1330 (11th Cir. 2008) (officer's single punch to the stomach of a non-resisting, handcuffed arrestee constituted excessive force); *Vinyard v. Wilson*, 311 F.3d 1340, 1349 (11th Cir. 2002) (grabbing forcibly plaintiff's arm and using pepper spray constituted excessive force when plaintiff was arrested for a minor offense, was handcuffed, secured in the back of a patrol car, and posed no threat); *Lee v. Ferraro*, 284 F.3d 1188, 1199 (11th Cir. 2002) ("[A] reasonable officer could not possibly have believed that he then had the lawful authority to take her to the back of her car and slam her head against the trunk *after* she was arrested, handcuffed, and completely secured, and after any danger to the arresting officer as well as any risk of flight had passed."); *Priester v. City of Riviera Beach*, 208 F.3d 919, 926–27 (11th Cir. 2000) (denying qualified immunity in light of clearly excessive force to officer who allowed police dog to attack arrestee who was already subdued and lying on the ground); *Slicker v. Jackson*, 215 F.3d 1225, 1227 (11th Cir. 2000) (denying

qualified immunity to police officers who arrested the plaintiff for disorderly conduct, placed him in handcuffs, and then, after he had been fully secured, slammed his head into the pavement and kicked him in the leg, head, and back); *Smith v. Mattox*, 127 F.3d 1416, 1418–20 (11th Cir. 1997) (denying qualified immunity in excessive force case to officer who broke arm of individual who "docilely submitted" to officer's request to "get down"); *see also Jones v. Michael*, 656 Fed. App'x 923, 930 (11th Cir. 2016) ("Defendant Officers' use of force against Schaefer *after* Schaefer was handcuffed for a nonviolent offense and if Schaefer was neither resisting nor attempting to flee, and posed no threat to the safety of the officers or to others, constituted excessive force in violation of the Fourth Amendment.").[15] Hardigree's allegations squarely state that he was lying on the ground, secured and not resisting, when Lofton and Norris acted together to use force against him. Taking those allegations as true, Norris violated Hardigree's Fourth Amendment rights.

Norris is also liable for failing to intervene, both in Lofton's gratuitous use of force and in Hardigree's unlawful arrest. "'[A]n officer who is present at the scene and who fails to take reasonable steps to protect the victim of another

---

[15] Norris did not bother to cite to a single case concerning the excessive force claim to show the absence of a constitutional violation or some ambiguity in the law that might shield him from liability.

officer's use of excessive force[ ] can be held liable for . . . nonfeasance.'" *Salvato v. Miley*, 790 F.3d 1286, 1295 (11th Cir. 2015) (quoting *Fundiller v. City of Cooper City*, 777 F.2d 1436, 1442 (11th Cir. 1985)) (denying qualified immunity to officer for failure to intervene in face of repeated tasing of incapacitated suspect). "This liability only applies when the defendant officer was in a position to intervene." *Dukes v. Miami-Dade Cty.*, 232 Fed. App'x 907, 913 (11th Cir. 2007) (citing *Ensley v. Soper*, 142 F.3d 1402, 1407 (11th Cir. 1998)). The facts as pleaded show that Norris was enabling, rather than preventing, the continued use of force against Hardigree. Norris argues that he was "apparently grappling" with Hardigree when Lofton thrice deployed his taser, so "[j]ust how was it that Defendant Norris was supposed to stop [Lofton]?" Doc. 31-1, at 11. The "grappling" fact is Norris'—not Hardigree's—and is direct contravention of Hardigree's allegation that "Plaintiff was lying prone on the ground and offering no resistance to the Defendants." Doc. 27, at ¶ 45. On the proper facts, even if Norris was not himself using excessive force, he stood passively by in the face of the derogation and degradation of the Constitution. For that, he is liable for Defendant Lofton's sadistic use of force.

    B.    <u>False Arrest</u>

The facts show that Norris himself was responsible for Hardigree's unlawful arrest, but Norris is also liable on a failure to intervene theory. *See Wilkerson v. Seymour*, 736 F.3d 974, 979 (11th Cir. 2013) (recognizing "a long line of precedent in excessive force cases in which we have recognized a duty to intervene," which applies with equal force to claims of failing to intervene in an unlawful arrest); *see also Jones v. Cannon*, 174 F.3d 1271, 1283–84 (11th Cir. 1999) (holding that where an officer was present during an arrest and knew that the arresting officer had no reasonable basis for arguable probable cause, the non-arresting officer could be liable under § 1983 if sufficiently involved in the arrest). Here, there is no indication whatsoever that Norris was anything less than fully involved in Hardigree's arrest. Norris does not argue otherwise, instead only stating that "with proper pleading," he could show "arguable reasonable suspicion and exigent circumstances, and thus arguable probable cause to arrest for Plaintiff's breaking off the *Terry* detention." Doc. 31-1, at 11–12. That argument might be more persuasive if only there wasn't that pesky precedent showing that would-be *Terry* detention to be unlawful. Because Norris' argument cannot carry the day at this juncture, Norris' motion to dismiss Hardigree's claims of false arrest—whether premised on direct participation or failure to intervene—should be denied.

## CONCLUSION

Defendant Norris' motion to dismiss wishes for different facts and different law. Unfortunately for him and his motion, the facts as alleged and the law as it stands are determinative on a Rule 12(b)(6) motion. His should be denied in full.[16]

Respectfully submitted, this 23rd day of April, 2018.

/s/ *William J. Atkins*
William J. Atkins
State Bar No. 027060

EDMOND, LINDSAY & HOFFLER, LLP
344 Woodward Avenue, SE
Atlanta, Georgia 30312
Tel. (404) 525-1090
batkins@edmondfirm.com

/s/ *Zack Greenamyre*
Zack Greenamyre
Georgia Bar No. 293002

MITCHELL & SHAPIRO LLP
3490 Piedmont Road, Suite 650
Atlanta, Georgia 30305
404-812-4747
zack@mitchellshapiro.com

## CERTIFICATION OF ELECTRONIC FILING

---

[16] To the extent the Court is inclined to grant Defendant Norris' motion in any part, Hardigree requests leave to amend to add additional details and facts to his complaint.

The undersigned hereby certifies the filing of this **Plaintiff's Brief In Opposition To Defendant Chad Norris' Motion To Dismiss** upon the parties and all counsel by the Court's Electronic Filing System.

This 23rd day of April, 2018.

*/s/Zack Greenamyre*
Zack Greenamyre
Georgia Bar No. 293002